## A08A2403. MOSLEY v. THE STATE.
### (675 SE2d 607)

BERNES, Judge.

Following a jury trial, Robert Anthony Mosley appeals from his conviction of trafficking in cocaine. Mosley argues that the evidence was insufficient to support his conviction and that he received ineffective assistance of counsel. He further contends that the trial court erred in denying his motion for mistrial and in charging the jury on the legal theory of conspiracy. We find no reversible error and affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict to determine only if it was sufficient for a rational trier of fact to find the defendant guilty of the crime charged beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *King v. State*, 289 Ga. App. 461, 462 (1) (657 SE2d 570) (2008). So construed, the evidence showed that during the early morning hours of May 5, 2007, a Gwinnett County Police sergeant was patrolling a known high-crime area and became suspicious when he observed two vehicles, a Pontiac Grand Am and a SUV, parked near an abandoned building. The sergeant parked his patrol car and moved to a vantage point where he could surreptitiously observe the area around the vehicles. Less than a minute later, four men emerged from an adjacent motel and approached the vehicles.

Mosley and his co-defendant, Ruth, walked to the Grand Am, which was later determined to have been rented by Mosley. Co-defendants Richardson and Silva-Morga walked to the SUV, where Richardson retrieved a bag from the SUV and placed it into the trunk of the Grand Am. Mosley, Ruth and Silva-Morga stood around the trunk of the Grand Am, seemingly acting as lookouts, while Richardson rummaged through the trunk until he located and removed a backpack. After Richardson removed the backpack, all four men began walking in the direction of the motel.

In the meantime, the sergeant had called for backup. The backup officer arrived just as the men were entering the breezeway to the motel. The officer asked the men to stop. Mosley, Ruth and Silva-Morga complied, but Richardson kept walking and dropped the backpack into a trash can. The sergeant then apprehended Richardson.

The backpack contained 377.45 grams of 50.7% pure cocaine heavily wrapped in saran wrap. According to a narcotics officer who testified at trial, the cocaine had a street value between $8,000 and $10,000 in powder form or as much as $15,000 if cut with an agent and compressed into rocks of crack cocaine.

Mosley, Ruth, Richardson and Silva-Morga, all of whom were North Carolina residents, were arrested at the scene. The ensuing investigation led the officers to a room in the motel which had been rented by Mosley. The officers knocked on the door of the room and five males, who were also North Carolina residents, answered. The men consented to a search of the room, which uncovered approximately $16,000 in cash and large amounts of saran wrap and ziplock baggies. Although the drug dog later alerted to the presence of drugs in the room, no drugs were found.

Mosley, Ruth, Richardson and Silva-Morga were charged with trafficking in cocaine. Mosley, Ruth and Silva-Morga were tried together. Mosley was convicted, but Ruth and Silva-Morga were acquitted. Richardson was tried separately.

1. In two separate enumerations of error, Mosley argues that the evidence presented at trial was insufficient to support his conviction and that the trial court erred in denying his motion for directed verdict. We disagree.

The standard of review for determining the sufficiency of the evidence to support a conviction is the same as that of the denial of a motion for a directed verdict of acquittal. *Hester v. State*, 282 Ga. 239, 240 (2) (647 SE2d 60) (2007). Both require a showing that the evidence, viewed in the light most favorable to the state, authorized a rational trier of fact to find Mosley guilty of trafficking in cocaine beyond a reasonable doubt. *Dorsey v. State*, 279 Ga. 534, 542 (3) (615 SE2d 512) (2005). See *Jackson*, 443 U. S. 307.

The crime of trafficking in cocaine is committed by "[a]ny person who knowingly sells, manufactures, delivers, or brings into this state or who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine." OCGA § 16-13-31 (a) (1). Under Georgia law, "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). The law further defines a person "concerned in the commission of a crime" as one who

(1) [d]irectly commits the crime; (2) [i]ntentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity; (3) [i]ntentionally aids or abets in the commission of the crime; or (4) [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime.

OCGA § 16-2-20 (b).

Here, the evidence was sufficient to convict Mosley of trafficking in cocaine. The sergeant observed Mosley and his co-defendants engaged in suspicious behavior in the middle of the night in a high-crime area well known to law enforcement due to the drug activity. The sergeant observed Mosley's co-defendant remove a backpack containing 377.45 grams of cocaine from the trunk of Mosley's rental vehicle.

In addition, at trial, co-defendant Ruth testified that earlier on the day in question, Mosley, a lifelong friend, drove to his house in the rented Grand Am and asked Ruth to drive with him to Georgia ostensibly to pick up Silva-Morga, a friend of Richardson, who was Mosley's cousin-in-law. According to Ruth, they were supposed to drive Silva-Morga back to North Carolina in exchange for $200. When they arrived in Georgia, Mosley drove directly to the motel — an establishment well known to law enforcement due to the high volume of drug and prostitution activity — and rented a room. Mosley then telephoned Richardson, who arrived at the motel room approximately 30 to 60 minutes later. Mosley and Richardson engaged in conversation. Shortly thereafter Richardson's phone rang. Richardson left the room and returned with the additional five men. The men smoked marijuana and then Mosley, Ruth, Richardson and Silva-Morga headed to their vehicles, at which time the sergeant began observing their behavior. Richardson removed the backpack containing the cocaine from Mosley's rental car and they began heading back toward the motel room.

Faced with this evidence, any rational juror could have found

Mosley guilty beyond a reasonable doubt of trafficking in cocaine — either directly or as a party to the crime — and the trial court did not err in denying his motion for directed verdict of acquittal. See OCGA §§ 16-2-20; 16-13-31 (a) (1). See generally *McKenzie v. State*, 283 Ga. App. 555, 558-559 (642 SE2d 187) (2007); *Martinez v. State*, 259 Ga. App. 402, 403 (1) (577 SE2d 82) (2003).

2. Mosley next argues that his trial counsel was ineffective. To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish both that his counsel's performance was deficient, and also that the deficient performance prejudiced his defense. *Corn v. State*, 290 Ga. App. 792, 797 (2) (660 SE2d 782) (2008). See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The failure to show either prong is fatal to an ineffective assistance claim. *Corn*, 290 Ga. App. at 797 (2). Moreover,

> [c]ounsel's decisions on matters of tactics and strategy, even if unwise, do not amount to ineffective assistance of counsel. Hindsight is not the measuring rod to be utilized in such situations, but whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.

(Punctuation and footnote omitted.) *Venegas v. State*, 285 Ga. App. 768, 770 (1) (647 SE2d 422) (2007). We will affirm a trial court's determination with respect to effective assistance of counsel unless the findings are clearly erroneous. *Corn*, 290 Ga. App. at 798 (2).

(a) Mosley argues that his counsel was ineffective because she failed to object to testimony from the sergeant that he "[didn't] recall" and "[wasn't] a hundred percent sure" who had registered the motel room, but he "believe[d] the room was registered to Mr. Mosley." This testimony was elicited prior to any competent evidence being presented as to who had rented the room.

We need not reach the issue of whether Mosley's counsel was deficient for failing to object to the challenged testimony because Ruth later took the stand and affirmatively testified that Mosley had rented the motel room. Consequently, the sergeant's testimony was merely cumulative of Ruth's properly admitted testimony and any error in its admission was harmless. *Culmer v. State*, 282 Ga. 330, 334 (3) (647 SE2d 30) (2007); *Moore v. State*, 283 Ga. App. 533, 536-537 (1) (642 SE2d 163) (2007). Because Mosley was not prejudiced by counsel's alleged deficiency, this claim affords Mosley no ground for relief. Id.

(b) Mosley also argues that his trial counsel rendered ineffective assistance by failing to object to testimony relating to the motel

room, its occupants, and the evidence found therein. He contends that the evidence should have been excluded because there was never a connection established between Mosley and the motel room.

Mosley's claim is factually incorrect. As noted above, Ruth testified that Mosley rented the motel room and described the events that transpired inside the room. Because the challenged testimony relating to the motel room was part of the circumstances surrounding the commission of the crime, it was relevant and material. See *Roberts v. State*, 282 Ga. 548, 551 (6) (651 SE2d 689) (2007). Mosley's counsel was not deficient for failing to make a futile objection. See *Mitchell v.* State, 287 Ga. App. 517, 518-519 (1) (a) (651 SE2d 821) (2007); *McGuire v. State*, 266 Ga. App. 673, 678 (4) (a) (598 SE2d 55) (2004).

(c) Mosley next argues that his counsel rendered ineffective assistance by failing to move to sever his trial from the trial of co-defendant Ruth. Again, we disagree.

Georgia law provides that a trial court, in its discretion in contemplation of the facts of each particular case, "should grant a severance before or during the trial whenever it appears necessary to achieve a fair determination of the guilt or innocence of a defendant." (Citation and punctuation omitted.) *Cain v. State*, 235 Ga. 128, 129 (218 SE2d 856) (1975). See OCGA § 17-8-4 (a). The burden is on the defendant requesting the severance, however, "to do more than raise the possibility that a separate trial would give him a better chance of acquittal." *Cain*, 235 Ga. at 129. Rather,

> [a] defendant seeking severance must show prejudice amounting to a due process denial, and in determining whether to grant a motion to sever, the trial court must consider (1) whether there are so many defendants that the jury would be confused as to what law and facts apply to whom; (2) whether evidence admissible against one defendant would be considered against another; and (3) whether the defenses were antagonistic to each other.

*Bailey v. State*, 295 Ga. App. 480, 482 (2) (672 SE2d 450) (2009).

At the hearing on Mosley's motion for new trial, Mosley's trial counsel testified and explained why she did not move to sever Mosley's trial from that of Ruth. First, she did not believe that she had legal grounds to do so, and we agree. See *Cain*, 235 Ga. at 130 (where statute clearly provides that a jointly tried defendant may testify for the other defendant or on behalf of the state, defendant cannot be heard to complain merely because he does not like his co-defendants' testimony); *Belcher v. State*, 207 Ga. App. 117 (1) (427 SE2d 88) (1993) (fact that co-defendant testified in her own defense

during joint trial and placed appellant at the crime scene did not warrant severance).

Second, Mosley's counsel believed that the same evidence, including Ruth's testimony, would have been presented even if Mosley and Ruth had been tried separately, and Mosley has made no showing to the contrary. See *Cain*, 235 Ga. at 130; *Bailey*, 295 Ga. App. at 482 (2); *Jackson v. State*, 284 Ga. App. 619, 625 (5) (644 SE2d 491) (2007).

Finally, Mosley's counsel believed that Ruth's testimony was consistent with her theory of defense. Ruth testified — and Mosley's counsel argued — that the men drove to Georgia from North Carolina in order to meet Richardson and pick up Silva-Morga. Both men claimed total ignorance of the presence of the drugs, which they blamed exclusively on Richardson. To the extent that her decision not to move to sever the cases was based upon trial tactics and strategy, it was reasonable and presents no ground for reversal. See *Jackson v. State*, 281 Ga. 705, 707 (6) (642 SE2d 656) (2007); *Gresham v. State*, 295 Ga. App. 449, 450 (1) (671 SE2d 917) (2009).

3. Mosley next argues that the trial court erred in denying his motion for mistrial after Ruth's counsel posed the following question to one of the investigating officers: "And you know that Mr. Mosley rented the room that the five people were staying in, right?" Mosley's counsel objected and made an immediate motion for mistrial. The trial court sustained the objection but denied the motion on the ground that the sergeant had already testified without objection to his belief that Mosley had rented the room, and Ruth's counsel made clear that Ruth intended to testify to the same fact. See Division 2 (a), supra. Mosley's counsel declined the judge's offer to give the jury a curative instruction.

Any alleged error in the trial court's denial of Mosley's motion for mistrial was rendered harmless in light of Ruth's properly admitted cumulative testimony that Mosley rented the motel room. See *Walker v. State*, 232 Ga. 33, 35 (205 SE2d 260) (1974) ("In the refusal to declare a mistrial, the discretion of the trial court will not be disturbed, unless it is made to appear that a mistrial was necessary to preserve the right of a fair trial.") (citation and punctuation omitted). See also *Johnson v. State*, 270 Ga. 234, 238-239 (4) (507 SE2d 737) (1998); *Lingerfelt v. State*, 238 Ga. 355, 360 (4) (233 SE2d 356) (1977).

4. Finally, Mosley contends that the trial court erred by instructing the jury on the legal theory of conspiracy. Mosley's argument lacks merit.

When the evidence supports a finding of conspiracy, it is not error for the trial court to charge the jury on the subject of

conspiracy even if a conspiracy is not alleged in the indictment. *Edge v. State*, 275 Ga. 311, 313 (6) (567 SE2d 1) (2002).

> The [s]tate may prove a conspiracy by showing that two or more persons tacitly came to a mutual understanding to pursue a criminal objective. And the conspiracy may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances.

(Citation and punctuation omitted.) Id.

The evidence presented at trial supported at least an inference that Mosley, Ruth, Richardson and Silva-Morga acted in concert to possess, transport and arrange for the sale of the cocaine that was ultimately found in Richardson's possession. The conspiracy charge was thus authorized. See *Edge*, 275 Ga. at 313 (6); *Camp v. State*, 181 Ga. App. 714, 717 (3) (353 SE2d 832) (1987). The case upon which Mosley relies, *Pruitt v. State*, 264 Ga. App. 44, 45-48 (2) (589 SE2d 864) (2003), is inapposite. *Pruitt* stands for the proposition that a conspiracy charge is inappropriate as between a buyer and a seller of narcotics because "the mere agreement of one person to buy contraband which another agrees to sell does not establish that the two acted in concert so as to support a finding of conspiracy." Id. at 47 (2). That is not the case here, where all of the co-defendants were arrested and charged with the same crime of trafficking in cocaine and were all alleged to have been attempting to sell the drugs.

*Judgment affirmed. Andrews, P. J., and Doyle, J., concur.*

DECIDED MARCH 19, 2009 — 

*Glynn R. Stepp*, for appellant.

*Daniel J. Porter, District Attorney, Jeanette J. Fitzpatrick, Assistant District Attorney*, for appellee.